IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARRON PERKINS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 05-CV-0754-MJR-CJP |
| | ) |
| WEXFORD HEALTH SOURCES; NURSE JILL; JENNIFER LITTLE; DEBBIE GROUNDSKI; NURSE BARABARA RODRIGUEZ; MEARL JUSTUS; T.J. COLLINS; LIEUTE-NANT SANDERS; and ST. CLAIR COUNTY, | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

Plaintiff Darron R. Perkins, pro se, filed the above-captioned civil rights action alleging that, while he was a pretrial detainee in the St. Clair County Jail, the defendants improperly discontinued his psychotropic medication. (Doc. 5.) Defendants, in groupings reflecting their respective affiliations, have filed three separate but interrelated motions for summary judgment. (Docs. 67, 71, 105.) The groups of defendants[1] will be referred to as follows:

1. "The Wexford defendants": Debbie Goretzke, Barbara Rodriguez, Jill Schreder, Jennifer Rude-Little and Wexford Health Sources, Inc. (Doc. 67);

2. "The Jail defendants": Mearl Justus, T.J. Collins and Lt. Saunders (Doc. 71); and

3. "The County," referring to St. Clair County, Illinois, which employed the Jail defendants and the Wexford defendants (Doc. 105).

---

[1]Several of the defendants' names are misspelled or otherwise incomplete in the complaint. "Nurse Jill" is Jill Schreder; "Jennifer Little" is Jennifer Rude-Little; "Debbie Groundski" is Debbie Goretzke; and "Lt. Sanders" is Lt. Steven Saunders.

Although the Court granted Perkins multiple extensions of time to do so, he has not responded to any of the motions for summary judgment.

## Summary of the Amended Complaint and Relevant Legal Principles

As previously summarized in the Court's threshold order:

> Plaintiff, a disabled Vietnam veteran who suffers from post traumatic stress disorder, states that on December 19, 2004, while he was incarcerated in the East St. Louis City Jail, his wife brought his medications for post traumatic stress disorder to the jail for Plaintiff to take as needed. On December 21, 2004, Plaintiff was transferred to the St. Clair County Jail.
>
> Upon his arrival in the St. Clair County Jail he was seen by Dr. Reddy, a psychiatrist, who prescribed him Prozac and Trazodone. These medications are very helpful in reducing Plaintiff's combat-related nightmares. He received these medications regularly at the St. Clair County Jail until July 2005.
>
> On an unspecified date in July 2005, Defendant Nurse Jill came to Plaintiff's cell on the nighttime medication rounds and gave him a Trazodone pill of a different shape and size than the one he normally received. When she realized her mistake, Nurse Jill asked for the tablet back, but Plaintiff had already swallowed it. Nurse Jill accused Plaintiff of giving the pill to another detainee. Plaintiff states that from that day on, for six months total, he did not receive either of his prescribed medications. He never received a disciplinary report regarding the incident, nor any explanation as to why the medication was stopped. Nurse Jill resigned two weeks after the incident.
>
> During the period he was denied his medication, he asked Defendant Barbara Rodriquez and other unspecified nurses over twenty times about the discontinuation. He filed more than fifteen sick call requests asking for the medication or to speak with Dr. Reddy, because he could not sleep. When he did manage to sleep he suffered from frequent nightmares, some of which caused him to fall out of his bunk, injuring his shoulder and his knee, but still he was not seen by medical staff about the medications or the falls.
>
> Plaintiff also filed formal grievances with jail staff. He specifically asked Defendant Sanders why he had been denied medication and told him that he was suffering from violent nightmares. Defendant Sanders did not provide the medications, but told Plaintiff to keep filing grievances. Plaintiff wrote notarized letters to both Sheriff Mearl Justus, and Jail Superintendent T.J. Collins asking that the medications be reinstated, that he receive a hearing to determine why the medications were discontinued, and to see the psychiatrist due to his suffering. Defendants Justus and Collins did not respond to the letters.

2

>As a result of the denial of the medications, Plaintiff suffered frequent violent combat-induced nightmares, sleep deprivation, physical injuries to his left shoulder and left knee from falling out of his bunk during nightmares, and deterioration in his overall health, thus hindering his ability to adequately assist with his upcoming criminal trial.
>
>In December 2005, [Plaintiff] was allowed to see a psychologist, Mr. McCain, who told Plaintiff he did not understand why Plaintiff had not been allowed his medications or to see the psychiatrist. Later in December, Plaintiff was finally allowed to see the psychiatrist. The psychiatrist told Plaintiff that he did not authorize the discontinuation, and he immediately re-prescribed the medications.

(Compl. 2–3.)

Pretrial detainees are protected by the Fourteenth Amendment's (substantive) due process clause, rather than the Eighth Amendment's prohibition against cruel and unusual punishment, which applies to convicted persons. *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007); *Collignon v. Milwaukee County*, 163 F.3d 982, 986–87 (7th Cir. 1999); *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Still, the Court of Appeals for the Seventh Circuit has noted that, as a practical matter, there is little difference between the applicable standards for liability. *E.g.*, *Thomas v. Cook County Sheriff's Dept.*, 588 F.3d 445, 452 n.1 (7th Cir. 2009); *Williams*, 509 F.3d at 401; *Collignon*, 163 F.3d at 988–89.

The "deliberate indifference" standard associated with the Eighth Amendment is used to analyze the conduct of prison officials for purposes of the Fourteenth Amendment—specifically with respect to medical decisions of the type presented in this case. *Id.* Prison officials cannot punish pretrial detainees; at the same time they are obligated to keep detainees safe and to provide adequate medical care. *See Sullivan v. Bornemann*, 384 F.3d 372, 377 (7th Cir. 2004); *Collignon*, 163 F.3d at 987–88; *Estate of Cole v. Fromm,* 94 F.3d 254, 259 (7th Cir. 1996). The need for a mental illness to be treated falls under the ambit of medical care. *See Sanville v. McCaughtry*, 266 F.3d 724 (7th Cir. 2001).

**Arguments for Summary Judgment**

The Wexford defendants argue:

1. No Wexford defendant denied Perkins due process, in that the discontinuation of Perkins's medication was pursuant to a physician's order, approved by Perkins's psychiatrist;

2. A mere disagreement over medical care is not a constitutional violation;

3. Perkins did not have a serious medical need;

4. There is not evidence of deliberate indifference, and medical malpractice is insufficient basis for liability; and

5. Wexford Health Sources did not have a policy or custom that infringed upon Perkins's constitutional rights.

(Docs. 67, 68.)

The Jail defendants argue:

1. They, as Sheriff, Assistant Superintendent of the Jail and Correctional Officer, did not have the requisite personal involvement in the discontinuation of Perkins's medication, in that the discontinuation of Perkins's medication was pursuant to a physician's order, approved by Perkins's psychiatrist;

2. They are entitled to qualified immunity; and

3. There is no evidence of an unconstitutional policy or custom to infringe upon Perkins's constitutional rights.

(Doc. 71.)

The County argues:

1. None of the individual employees had the requisite personal involvement in the discontinuation of Perkins's medication, in that the discontinuation of Perkins's medication was pursuant to a physician's order, approved by Perkins's psychiatrist;

2. The individual defendants are all entitled to qualified immunity; and

3. There is no evidence that the County had an unconstitutional policy or custom to infringe upon Perkins's constitutional rights.

(Doc. 71.)

### **Legal Standard for Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l–Ind., Inc.,* 211 F.3d 392, 396 (7th Cir. 2000). In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Spath,* 211 F.3d at 396.

If the moving party meets its burden, the nonmoving party has the burden "to go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Borello v. Allison,* 446 F.3d 742, 748 (7th Cir. 2006) (citations omitted) (internal quotation marks omitted); *accord Celotex,* 477 U.S. at 322–26; *Johnson v. City of Fort Wayne,* 91 F.3d 922, 931 (7th Cir. 1996).

The local rules of Court generally permit the Court in its discretion to construe a failure to respond to a motion as assent to the motion. S.D. Ill. R. 7.1(c). However, the Court will not grant summary judgment for defendants merely on the basis of a plaintiff's failure to respond. *See Kovilic Constr. Co. v. Missbrenner,* 106 F.3d 768, 772–73 (7th Cir. 1997) (holding that a dismissal is not an appropriate sanction for failure to comply with a local rule); *Cooper v. Lane,* 969 F.2d 368, 371 (7th Cir. 1992) (holding that a court has an independent duty on summary judgment to determine whether a genuine issue for trial exists and may not grant summary judgment merely because a party has failed to respond to a summary judgment motion).

## The Record Evidence

The voluminous documentary evidence submitted by the defendants—including Perkins's medical records (Docs. 67-1, 67-13, 71-4) and excerpts of Perkins's deposition testimony (Doc. 71-5)—will not be summarized here. The Court hereby adopts the Wexford defendants' very thorough evidentiary summary (Doc. 67). The uncontroverted documentary evidence submitted by the defendants generally supports the version of events set forth in the amended complaint. The following evidence pertains to the key issues before the Court.

According to the pleadings, "Nurse Jill" instigated the discontinuation of Perkins's medication in an effort to cover up her dispensing the wrong medicine to Perkins. Nurse Jill purportedly made up a story about Perkins giving his Trazodone to another detainee. Medication administration records reflect that through July 25, 2005, Perkins was given Trazodone and Prozac as prescribed by his psychiatrist, Dr. Reddy. (Doc. 67-4 at 4; Doc. 71-4 at 4.) A medical progress note dated July 25, 2005, indicates that Perkins gave his Trazodone to another detainee; he was told that although he has a right to refuse medication, he cannot pass his medication to another, and his medication would either be discontinued or put on hold. (Doc. 67-4 at 2; Doc. 71-4 at 16.) On July 26, 2005, Medical Director Charles Ampadu, M.D., orally ordered Perkins's Trazodone and Prozac prescription to be discontinued. (Doc. 67-4 at 3; Doc. 71-4 at 15.) Nurse Slate's written notation of that order includes a notation, "Called Dr. Reddy he approved." (Doc. 67-4 at 3; Doc. 71-4 at 15.) On July 29, 2005, Dr. Ampadu actually signed the notation in the record, confirming his oral order. (Doc. 67-4 at 3; Doc. 71-4 at 15.)

Perkins was seen by a psychologist on August 1, 2005; notes reflect that Perkins asserted that he had not given his medication to another detainee. (Doc. 67-4 at 5.) Evaluation notes reflect that Perkins was off his medication, but that he did not voice any suicidal/homicidal ideations, and that Perkins would continue to be monitored. (*Id.*) Perkins was evaluated again by

6

a psychologist on September 20, 2005, and his mood was characterized as "calm/stable," and the plan was to continue to monitor and review his status. (*Id.* at 6.) However, the next day, on September 21, 2005, Dr. Reddy, Perkins's psychiatrist, evaluated him and re-prescribed Trazodone and Prozac. (Doc. 67-5 at 1-2.) Dr. Reddy's notes indicate that Perkins complained of experiencing nightmares and depression, but was not suicidal or homicidal. (Doc. 67-5 at 1.) Medication records reflect that Perkins was given Trazodone and Prozac until November 25, 2005, when, by order of Dr. Reddy, the Trazodone prescription was discontinued and Remeron was prescribed. (Doc. 67-5 at 3-6; Doc. 67-6 at 2-3.) Perkins was given Remeron and Prozac through December 2005. (Doc. 67-6 at 4.)

The affidavits of Sheriff Justus, Jail Superintendent T.J. Collins and Lt. Saunders have also been submitted. According to Perkins's deposition testimony, on September 17, 2005, he gave an unidentified person a letter to Sheriff Justus, which he believed was placed in Justus's mailbox at the Jail. (Doc. 71-5 at 4-7.) Perkins acknowledged that he is unaware of any involvement by Justus in the discontinuation of his medication. (Doc. 71-5 at 10.) According to Sheriff Justus, he had no knowledge of Perkins's situation until he was served with the amended complaint. (Doc. 71-1.) According to Justus, he has no medical training and relies on Wexford medical staff to provide appropriate medical care to all detainees, and he had no part in the decision to discontinue Perkins's medication. (Doc. 71-1.)

According to Superintendent Collins' affidavit, he has delegated handling grievances to Assistant Superintendent Knapp, but Perkins's wife did contact him by phone about the discontinuation of Perkins's medication. (Doc. 71-2 at 1–2.) Upon inquiring of medical staff on "several" occasions, Collins was informed that Perkins's medication was being dispensed in accordance with doctors' orders. (Doc. 71-2 at 2.) Although Collins is a trained First Responder ("First-Aid, CPR, etc."), he relies on Wexford medical staff to provide appropriate medical care

7

to all detainees, and he had no part in the decision to discontinue Perkins's medication. (Doc. 71-2 at 2.)

Perkins also testified that he gave Lt. Saunders complaint forms, and he assumes they were forwarded up the chain of command. (Doc. 71-5 at 12.) Perkins acknowledges that Saunders may not have had "any particular involvement" in his medication being discontinued. (Doc. 71-5 at 14.) According to Lt. Saunders' affidavit, he passed any Health Services Request Forms received from Perkins to Wexford personnel and, to his knowledge, Perkins's medications were dispensed in compliance with doctors' orders. (Doc. 71-3 at 1.) Although Saunders is a trained First Responder ("First-Aid, CPR, etc."), he relies on Wexford medical staff to provide appropriate medical care to all detainees, and he had no part in the decision to discontinue Perkins's medication. (Doc. 71-3 at 2.)

## Analysis

Deliberate indifference is a high standard requiring a plaintiff to prove that the defendants were aware of facts from which a substantial risk of serious harm could be inferred and that they actually drew that inference. *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994). "[I]t is important to emphasize that medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference." *Johnson v. Doughty,* 433 F.3d 1001, 1013 (7th Cir. 2006). Mere dissatisfaction or disagreement with a course of treatment is generally insufficient, and the treatment decision of a medical professional is given deference, unless "no minimally competent professional would have so responded under those circumstances." *Jackson v. Kotter,* 541 F.3d 688, 697–98 (7th Cir. 2008) (citations omitted) (internal quotation marks omitted).

Although the Court views the evidence in the light most favorable to the plaintiff, because Perkins has not submitted any evidence or otherwise responded to the evidence

8

submitted by the defendants, and because his own deposition testimony belies some of the averments in the amended complaint, there are no material questions of fact preventing the defendants from being granted summary judgment.

### *The Jail Defendants*

The three "Jail defendants," Sheriff Justus, Superintendent Collins and Lt. Saunders, have established, by uncontroverted evidence, that they lacked the requisite personal involvement for liability.

*Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983), stressed that "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *See also McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982). Accordingly, liability under Section 1983 cannot be based on the doctrine of respondeat superior. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). "However, a defendant's direct participation in the deprivation is not required. An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of a plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." *Rascon v. Hardiman*, 803 F.2d 269, 273–74 (7th Cir. 1986). Supervisory officials may be liable for the constitutional torts of their subordinates *if* the supervisor knows of and facilitates, approves, condones, or turns a blind eye to the conduct. *Chavez v. Cady,* 207 F.3d 901, 906 (7th Cir. 2000); *Jones v. City of Chicago,* 856 F.2d 985, 992–93 (7th Cir. 1988).

Sheriff Justus has sworn that he had no knowledge of Perkins's situation until he was sued in 2007. According to Perkins's own deposition testimony, he actually has no knowledge of whether his letter was ever placed in the Sheriff's mailbox, let alone whether it was read by the

9

Sheriff. There is nothing to contradict Justus's sworn testimony that he relies on Wexford personnel to care for and treat the detainees in the St. Clair County Jail. There is no evidence the Sheriff had a policy of custom that impacted the decision to discontinue Perkins's medication.

Superintendent Collins admittedly had personal knowledge of the discontinuation of Perkins's medication, but it is uncontroverted that he made inquiries and relied on assurances that Perkins's medication was being dispensed per doctor's orders. Collins' training as a First Responder hardly qualifies him to trump the decision of a physician and a psychiatrist to discontinue Perkins's medication, and there is nothing from which to discern that the decision falls outside the bounds of medical competence.

At most, Lt. Saunders passed on Perkins's complaint forms, as he should have. Perkins acknowledges that there is no reason to believe Saunders had any involvement in the decision to discontinue Perkins's medication. Saunders' training as a First Responder hardly qualifies him to trump the decision of a physician and a psychiatrist to discontinue Perkins's medication, and there is nothing from which to discern that the decision falls outside the bounds of medical competence.

Therefore, defendants Justus, Collins and Saunders are entitled to summary judgment.

*The Wexford Defendants*

The medical records are uncontroverted. Dr. Reddy prescribed Trazodone and Prozac on July 21, 2005, and those prescriptions were discontinued with Dr. Reddy's consent on July 26, 2005. Although the next time Dr. Reddy evaluated Perkins he re-prescribed Trazodone and Prozac, the notes of two psychological evaluations reflects that during the intervening two months Perkins had no suicidal/homicidal ideations. At the time Dr. Reddy re-prescribed the medication, his notes reflect that he also did not discern suicidal/homicidal ideations, although

he did record depression and nightmares.[2] In any event, the Court must defer to the professional opinions of the psychologist and the psychiatrist. Moreover, the physician, the psychiatrist and the psychologist involved in making the decision not to prescribe Trazodone and Prozac are *not* defendants in this case.

There is simply nothing but Perkins's bald assertions in the complaint to link the individual Wexford defendants, Debbie Goretzke, Barbara Rodriguez, Jill Schreder and Jennifer Rude-Little, to the discontinuation of his medication. Rather, all of the evidence in the record reflects that the decisions to discontinue the medication and to not re-prescribe it until September 21, 2005, was made by Dr. Ampadu, Dr. Reddy and a psychologist. Therefore, defendants Goretzke, Rodriguez, "Nurse Jill" Schreder and Rude-Little all lack the requisite personal involvement for liability and are entitled to summary judgment.

As a corporation, Wexford Health Sources can, obviously, only act through its employees. It is not in dispute that Goretzke, Rodriguez, "Nurse Jill" Schreder and Rude-Little, as well as the doctor, psychiatrist and psychologist who made the decisions to discontinue and not re-prescribe Perkins's psychotropic medications during the pertinent time, were all Wexford employees. There is no evidence to substantiate that Wexford had any policy or custom to improperly deny Perkins medication; rather, the decision to discontinue and not re-prescribe Perkins's medication was—according to the uncontroverted documentary evidence—entirely a treatment decision made by a physician, a psychiatrist and a psychologist. Even if one were to question the decision of the psychologist not to call for re-prescribing psychotropic medication before September 21, 2005, there is nothing from which to infer that anything more than professional malpractice. Malpractice alone is insufficient to establish deliberate indifference.

---

[2]Dr. Reddy, not any of the named defendants, made the subsequent decision on November 25, 2005, to discontinue Trazodone and prescribe Remeron. That decision is not specifically at issue in the amended complaint.

11

*Johnson v. Doughty,* 433 F.3d 1001, 1013 (7th Cir. 2006); *Jackson v. Kotter,* 541 F.3d 688, 697-698 (7th Cir. 2008). Therefore, Wexford Health Sources is also entitled to summary judgment.

### *The County*

The defendants do not dispute that St. Clair County's involvement and liability in the decision to discontinue Perkins's medication stems wholly from its employees' participation in the discontinuation of Perkins's medication. There is no evidence or suggestion that a specific or tacit County policy or practice motivated those who made the decision to discontinue Perkins's psychotropic medication. Having found that the physician, the psychiatrist and the psychologist involved merely made treatment decisions within the bounds of reasonable professional competence, and that there is no evidence of deliberate indifference, the County is also entitled to summary judgment.

### Conclusion

Having concluded that all of the defendants are entitled to summary judgment, the Court need not address the defendants' arguments that they are entitled to qualified immunity. Accordingly:

1. The unopposed motion of defendants Debbie Goretzke, Barbara Rodriguez, Jill Schreder, Jennifer Rude-Little and Wexford Health Sources, Inc., for summary judgment (Doc. 67) is **GRANTED**;

2. The unopposed motion of defendants Mearl Justus, T.J. Collins and Lt. Saunders for summary judgment (Doc. 71) is **GRANTED**; and

3. The unopposed motion of defendant St. Clair County, Illinois (Doc. 105) is **GRANTED**.

Granting these motions disposes of all claims against all defendants, so the Court **DIRECTS** the Clerk of Court to enter judgment that Plaintiff Perkins take nothing in his suit against the defendants and to close the case.

**IT IS SO ORDERED.**

**DATED February 23, 2010.**

<u>s/ Michael J. Reagan</u>
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**